UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOLLY LIVELY, on behalf of herself and all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>CARIBBEAN CRUISE LINE, INC., a Florida corporation, and DOES 1 through 20, inclusive and each of them,<br><br>   Defendants. | No.  2:14-cv-00953 JAM CKD<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STAY** |

   This matter is before the Court on Defendant Caribbean Cruise Line, Inc.'s ("Defendant") Motion to Stay (Doc. #11) this action pending resolution of substantially similar actions. Plaintiff Holly Lively ("Plaintiff") opposes Defendant's motion (Doc. #18).  Defendant filed a reply (Doc. #20).  For the following reasons, Defendant's motion is DENIED.[1]

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for August 6, 2014.

1

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiff is a resident of California. Compl. ¶ 2. Defendant is a Florida corporation with its principal place of business in Florida. Compl. ¶ 5. Plaintiff alleges that, beginning on April 7, 2014, Defendant contacted Plaintiff on her cellular telephone three times. Compl. ¶ 9. Plaintiff alleges that each phone call was "an attempt to communicate with Plaintiff regarding a cruise." Compl. ¶ 9. Plaintiff claims that these phone calls were made using an "automated telephone dialing system" and were in violation of the federal Telephone Consumer Protection Act ("TCPA"). Compl. ¶ 10.

On April 17, 2014, Plaintiff filed the Complaint (Doc. #1) in this Court. The Complaint includes the following causes of action: (1) "Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227;" and (2) "Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. §227."

Plaintiff brings this action on behalf of herself and all others similarly situated, as a member of the following proposed class: "All persons within the United States who received any telephone calls from Defendant to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had not previously provided express consent to receiving such calls within the four years prior to the filing of this Complaint."

II.   OPINION

A.   <u>Legal Standard</u>

A district court has the "inherent power to control the

1 disposition of the causes on its docket in a manner which will
2 promote economy of time and effort for itself, for counsel, and
3 for litigants." CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir.
4 1962).  The decision to grant or deny a stay is within the "sound
5 discretion" of the district court.  CMAX, 300 F.2d at 268.
6     B.    Discussion
7         1.    Other Pending Actions
8     With regard to this motion, the primary dispute between
9 Plaintiff and Defendant is whether the present case is
10 "substantially similar" to a number of other pending class
11 actions against Defendant.  Mot. at 2; Opp. at 5.  As Defendant's
12 motion turns on its claim that Plaintiff's proposed class is
13 substantially similar to the proposed classes in the other
14 pending actions, a careful look at the proposed class in each
15 case is warranted.  As explained below, the Court finds there are
16 important differences between Plaintiff's proposed class
17 definition (supra at 2) and those proposed in the other class
18 actions against Defendant.
19     In Bank v. Caribbean Cruise Line, Inc., 1:12-cv-00584-JG-VMS
20 (E.D.N.Y.) (hereinafter "Bank II"), the proposed class includes
21 "all persons to whose residential telephone lines Defendant
22 placed one or more telephone calls using an artificial or
23 prerecorded voice that delivered a message . . . during the
24 period beginning four years prior to the commencement of this
25 action until the present."  Valero Dec., Ex. 1 ¶ 17.  Thus, Bank
26 II is different from the case at bar because it concerns phone
27 calls made to *residential* phones, rather than *cellular* phones.
28 The TCPA makes a clear distinction between the provisions that

3

apply to residential lines and those that apply to numbers assigned to a "cellular telephone service."  Compare 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting calls "to any telephone number assigned to a . . . cellular telephone service" unless with "prior express consent" or for emergency purposes) with § 227(b)(1)(B) (prohibiting calls to "any residential telephone line" unless it is for emergency purposes, with consent, or expressly exempted).

In Bank v. Caribbean Cruise Line, Inc., 1:12-cv-05572-ENV-RML (E.D.N.Y.) (hereinafter "Bank III"), the proposed class includes "all persons to whose residential telephone lines CCL, or a third party acting with the authorization of CCL, placed one or more telephone calls using an artificial or prerecorded voice that delivered a message . . . during the period from February 7, 2012 to the commencement of this action until the present." Valero Dec., Ex. 2 ¶ 18.  Thus, Bank III is also dissimilar because it concerns calls made to residential, not cellular, phone lines.

In Birchmeier, et al. v. Caribbean Cruise Line, Inc., et al., 1:12-cv-04069 (N.D.Ill.), the most recent proposed class definition includes persons to whom "(1) one or more telephone calls were made by, on behalf, or for the benefit of the Defendants, (2) purportedly offering a free cruise in exchange for taking an automated public opinion and/or political survey, (3) which delivered a message using a prerecorded or artificial voice; (4) between August 2011 and August 2012 . . ." (Wood Dec., Ex. 2 (Plaintiffs' Supplemental Reply in Support of Class Certification) at 2).  Birchmeier is different from the present

4

1 case, due to the alleged offer of a free cruise "in exchange for
2 taking an automated public opinion and/or political survey."  Id.
3 In this case, Defendant "did not request that Plaintiff take a
4 survey or request Plaintiff submit to a political poll."  Opp. at
5 3.  Accordingly, the Birchmeier case may well touch on First
6 Amendment concerns which are not relevant in this case.
7 Moreover, the limited time frame in Birchmeier would exclude the
8 calls to Plaintiff, which occurred in April 2014.  Compl. ¶ 9.
9      In Visser v. Caribbean Cruise Line, Inc., et al., 1:13-cv-
10 01029 (W.D. Mich.), the proposed class is defined as follows:
11 "All persons residing in any of the United States that are
12 holders of residential telephone numbers to which a pre-recorded
13 and/or artificial call or message was sent on behalf of
14 Defendants advertising or promoting the goods or services of
15 Defendants without the prior express consent of the holder (the
16 'Class')."  Valero Dec., Ex. 1 ¶ 19.  Accordingly, Visser is
17 dissimilar to the present case for the same reason as Bank II and
18 Bank III: it only includes recipients of *residential* calls.
19 Although the plaintiff in Visser also seeks to represent a
20 "Cellular Subclass," that group is defined as "all members *of the*
21 *Class* who received the complained of call or message at their
22 cellular telephone numbers[.]"  Valero Dec., Ex. 4 ¶ 20 (emphasis
23 added).  By its own terms, the Class is limited to "holders of
24 residential telephone numbers to which" the call was sent.  Id.
25 ¶ 19.  Therefore, the "Cellular Subclass" is a null set: any
26 member of the Class must have received the relevant call at his
27 residential number, not at his cellular telephone number.
28      In Jackson v. Caribbean Cruise Line, Inc., et al., CV-14-

5

1  2485-ADS-AKT (E.D.N.Y.), the proposed class is defined as all
2  persons "who, on or after a date four years prior to the filing
3  of this action . . . were sent text message calls by or on behalf
4  of defendant Caribbean Cruise Line, Inc." Valero Dec., Ex. 5
5  ¶ 22. Thus, Jackson is different from the present case because
6  it concerns text messages, rather than phone calls.
7       Finally, in McCabe v. Caribbean Cruise Line, Inc., et al.,
8  1:13-cv-01029-PLM (E.D.N.Y.), the proposed class includes "all
9  persons to whose cellular telephone lines or residential
10 telephone lines Defendants, or third parties acting with the
11 authorization of Defendants, placed one or more "Free Cruise"
12 Robocalls . . . during the period from four years prior to the
13 commencement of this action until the present[.]" Valero Dec.,
14 Ex. 6 ¶ 7. Plaintiff would likely be excluded from the proposed
15 class in McCabe, due to the timing of the phone calls received by
16 Plaintiff. By the terms of the complaint in McCabe, any phone
17 calls occurring after the complaint was filed would fall outside
18 the scope of McCabe. (Throughout the complaint in McCabe, the
19 term "until the present" is used interchangeably with "until the
20 date on which this action is commenced." Valero Dec., Ex. 6 ¶ 7-
21 9.) The McCabe complaint was filed on April 3, 2014. Valero
22 Dec., Ex. 6. Here, Plaintiff alleges that the first phone call
23 occurred on April 7, 2014. Compl. ¶ 9. Accordingly, Plaintiff
24 would not be an eligible member of the proposed class in McCabe.
25       2.   *CMAX* Factors
26     The Ninth Circuit has held that district courts should
27 consider the following three factors in evaluating a motion to
28 stay: "the possible damage which may result from the granting of

a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." CMAX, 300 F.2d at 268.

### 3. Analysis

#### a. Harm to Plaintiff if Stay is Granted

Defendant argues that Plaintiff would not be harmed by a stay, which would "simply delay, for a short period of time, Plaintiff's potential recovery[.]" Mot. at 5. Defendant argues that "a delay in recovering potential monetary damages is not sufficient harm to avoid the imposition of a stay." Mot. at 5. Plaintiff does not directly respond to this argument.

It is true that a delay in monetary recovery is minimal harm for purposes of the CMAX inquiry. CMAX, 300 F.2d at 268-69. However, the delay sought by Defendant could be substantial. The two cases which are closest to resolution, Bank III and Birchmeier, are least similar to the present case. (Bank III concerns residential phone calls, and Birchmeier concerns political polls and a time period two years prior to the calls in the case at bar.) Given the significant differences in the factual and legal issues raised in these cases, a stay pending their result – even if it were relatively brief – would not be helpful to the Court or the parties. Conversely, McCabe, the case which is arguably most similar to the present case, was only commenced a month before this case. A stay pending the outcome of McCabe could stretch on for several years. Such a lengthy delay would complicate access to evidence and witnesses.

1  Accordingly, the imposition of a stay would result in at least
2  some harm to Plaintiff.
3              b.    <u>Harm to Defendant if Stay is Denied</u>
4       Defendant argues that it would be harmed if a stay is
5  denied, because "there are approximately seven . . .
6  substantially similar class action suits pending against
7  [Defendant] for alleged TCPA violations related to telephone
8  calls and SMS messages."  Mot. at 5-6.  Defendant further argues
9  that the "simultaneous prosecution of these various actions in
10 separate courts before separate judges leads to the very real
11 possibility of inconsistent rulings, and subjects the defendants
12 and other witnesses to a duplicative burden and expense of
13 discovery."  Mot. at 6.  Plaintiff responds that "the other
14 recently filed putative class cases against [Defendant] are
15 easily distinguishable."  Opp. at 3.
16      As acknowledged by Defendant, "being required to defend a
17 suit, without more, does not constitute a clear case of hardship
18 or inequity," for the purposes of granting a stay.  <u>Lockyer v.</u>
19 <u>Mirant Corp.</u>, 398 F.3d 1098, 1112 (9th Cir. 2005).  Defendant's
20 contention that "the situation is unique" - because of the large
21 number of substantially similar cases pending against it - is not
22 persuasive.  Mot. at 5.  As discussed in detail above, the other
23 pending cases are not substantially similar to the present case.
24 <u>Supra</u> at 3-6.  There are important factual and legal distinctions
25 between those cases and this case, and the mere fact that
26 Defendant has been sued by multiple parties in multiple courts
27 does not constitute judicially-cognizable hardship.  <u>Lockyer</u>, 398
28 F.3d at 1112.

1    Moreover, Defendant's concern over the "possibility of
2    inconsistent rulings" should be assuaged by the fact that the
3    pending cases are not substantially similar to the present case.
4    Mot. at 6.  The important legal and factual distinctions between
5    this case and other pending cases significantly decrease – if not
6    eliminate – the likelihood of inconsistent rulings.  For example,
7    differing results at the Rule 23 class certification stage would
8    be consistent with the differing class definitions proposed in
9    each case.  Moreover, Defendant's concern over the "duplicative
10   burden of discovery" appears to be overstated.  For example,
11   discovery in Birchmeier is limited – by the class definition – to
12   the time period from August 2011 to August 2012, whereas
13   discovery in the present case would focus on calls made in 2014.
14                c.    Orderly Administration of Justice
15      With respect to the third CMAX factor, Defendant argues
16   that the "orderly administration of justice requires a stay in
17   this action."  Mot. at 7.  Defendant maintains that this case
18   raises the same factual and legal issues as those raised in the
19   pending class actions, and that these issues include "who made
20   the calls, how any such calls were made, what equipment was used,
21   did the equipment constitute 'automatic telephone dialing
22   equipment,' is [Defendant] liable for telephone calls made by
23   third parties, is a class action the proper and superior method
24   of resolving these disputes, etc."  Mot. at 7.  Plaintiff
25   continues to respond that the present action raises different
26   factual and legal issues than the pending class actions.  Opp. at
27   3.
28      The factual and legal issues identified by Defendant will

9

not be identical to those raised in the pending class actions. As noted above, the issue of whether "a class action [is] the proper and superior method of resolving these disputes" necessarily depends on the unique contours of the proposed class in each case. Moreover, the issues of "who made the calls, how any such calls were made, what equipment was used, [and] did the equipment constitute 'automatic telephone dialing equipment'" will vary significantly by case. Plaintiff's complaint concerns a different time period than that in Birchmeier, a different form of communication (phone calls vs. text messages) than that in Jackson, and may well implicate a separate and distinct marketing campaign than that seen in any of the other pending actions. Similarly, the issue of whether Defendant is "liable for telephone calls made by third parties" may vary based on the factual circumstances of each case, such as the agreement between Defendant and the specific third party caller involved. Plaintiff contends that Defendant "enlists the assistance of a myriad group of third parties" to make its phone calls. Opp. at 2. If this is true, the issue of Defendant's liability for those calls may vary by third party caller. Accordingly, it cannot be said that the factual and legal issues raised in the present case are substantially similar to those raised in the pending class actions. When considering a stay, "the general principle is to avoid duplicative litigation." Colorado River Water Conservation Dist. v. U. S., 424 U.S. 800, 817 (1976). As this litigation would not be duplicative, a stay is not appropriate.

    Finally, Defendant's argument that this Court should grant a stay because it is an overburdened district is misplaced.

| | |
|---|---|
| 1 | Although the Eastern District of California is one of the busiest |
| 2 | districts in the country, the Ninth Circuit has noted that a |
| 3 | district court's "ability to control its own docket, particularly |
| 4 | in this time of scarce judicial resources and crowded dockets" is |
| 5 | not, without more, sufficient grounds to impose a stay.  <u>Lockyer</u> |
| 6 | <u>v. Mirant Corp.</u>, 398 F.3d 1098, 1112 (9th Cir. 2005).  Given the |
| 7 | significant differences between the present case and the pending |
| 8 | class actions, it would be improper to grant Defendant's request |
| 9 | for a stay. |

### III. ORDER

For the reasons set forth above, the Court DENIES Defendant's Motion to Stay:

IT IS SO ORDERED.

Dated: September 3, 2014

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

11